UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT ALLEN WEST,<br><br>                Plaintiff,<br><br>        v.<br><br>JEFF MACOMBER, et al.,<br><br>                Defendants. | Case No. 1:26-cv-01718-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED<br><br>(ECF No. 8)<br><br>THIRTY (30) DAY DEADLINE<br><br>ORDER DIRECTING THE CLERK OF COURT TO ASSIGN A DISTRICT JUDGE TO THIS ACTION |

Plaintiff Scott Allen West is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 5). Plaintiff filed his Complaint on March 3, 2026. (ECF No. 1). On May 6, 2026, the Court screened Plaintiff's complaint and found that Plaintiff had failed to state any cognizable claims. (ECF No. 7). The Court provided Plaintiff with leave to file an amended complaint, or to notify the Court that he wishes to stand on his complaint. (*Id.*).

Plaintiff filed a First Amended Complaint on May 21, 2026[1], which is now before the Court for screening. (ECF No. 8). Plaintiff's First Amended Complaint generally alleges that prison officials were deliberately indifferent to his safety needs, which led to him being

---

[1] Plaintiff also filed a request for leave to file a First Amended Complaint (ECF No. 9); however, this was unnecessary, as the Court's screening order provided Plaintiff leave to file an amended complaint.

1

assaulted by another inmate. (*Id.*).

Upon review of the First Amended Complaint, the Court concludes that Plaintiff fails to state any cognizable constitutional claims and will recommend dismissal of Plaintiff's First Amended Complaint.

## I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may screen the complaint on these same bases under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

\\\

## II.   BACKGROUND

### a. Plaintiff's Complaint and Screening Order

In his initial complaint, Plaintiff sued the following Defendants: (1) Jeff Macomber, Secretary of the California Department of Corrections and Rehabilitation (CDCR); (2) "Bailey O'Bryant," VSP Warden; (3) A. Rivera, VSP Correctional Officer (CO); and (4) R. Dejesus, VSP CO. (ECF No. 1 at 2). Plaintiff stated the incidents described in the complaint arose at Valley State Prison ("VSP.") (*Id.* at 1).

The Court screened Plaintiff's complaint on May 6, 2026 and found that Plaintiff had failed to state any cognizable claims. (ECF No. 7). The Court provided Plaintiff with leave to file an amended complaint, or to notify the Court that he wishes to stand on his complaint. (Id.).

### b. Plaintiff's First Amended Complaint[2]

Plaintiff states that the incidents described in the complaint arose at Valley State Prison (VSP). (ECF No. 8 at 1). He alleges claims against the following Defendants: (1) Jeff Macomber, Secretary of the California Department of Corrections and Rehabilitation (CDCR); (2) "Bailey O'Bryant," VSP Warden; (3) A. Rivera, VSP Correctional Officer (CO); and (4) R. Dejesus, VSP CO. (*Id.* at 2).

Plaintiff alleges the following facts. Around September 24, 2025, another inmate named Lopez was transferred to VSP over objections Lopez made to unspecified prison officials that he did not want to be housed at a "50 50 prison." (*Id.* at 10). Inmate Lopez told unspecified prison "officials that he would attack someone if he is forced to be housed" at VSP. (*Id.*).

Unspecified prison officials, CDCR Secretary Macomber, and Warden O'Bryant "are aware of the problems with forcing threat group and gang inmates to integrate and be housed at designated prison facilities with sex offenders and child abusers. (*Id.*). CDCR policy and practice force such inmates to live together as part of CDCR officials' efforts to force the most dangerous incoming prisoners to reform, which results in "attacks and assaults on the model prisoner population." (*Id.* at 11).

CDCR Secretary Macomber will not change this policy or practice despite numerous

---

[2] For readability, minor alterations, like correcting misspellings, have been made to some of Plaintiff's quotations without indicating each change.

assaults by threat group and gang member inmates on "model prisoners" and despite the complaints filed by both groups of inmates. (*Id.*). And complaints have been filed putting Warden O'Bryant on notice that numerous assaults have been occurring as a result of the practice. (*Id.*)

CDCR Secretary Macomber and Warden O'Bryant are aware that prison regulations declare threat group and gang member inmates a danger to the public and general prison population and that the majority of these inmates "are incorrigible and the prisons' classification committees should not be endorsing these inmates to non-designated prisons in violation of Title 15 § 3269.4(a)." (*Id.* at 12).

On September 24, 2025, Plaintiff went to medical line after breakfast "to pick up his KOPs." (*Id.*). On returning to his dorm unit, COs Rivera and Dejesus passed Plaintiff while escorting Inmate Lopez, a new arrival, to his dorm unit and CO Rivera instructed Plaintiff to turn around and go back towards dorm unit 1. Plaintiff complied.

> While standing in front of dorm #1 unit, [Plaintiff] watched as Inmate Lopez turned around, walked passed CO Rivera and CO Dejesus, dropped his personal property on the ground and attacked [Plaintiff] hitting [him] in the mouth, head causing [Plaintiff] to fall to the ground. Lopez then kicked [Plaintiff] in the head, back, and in the upper body area. CO Rivera and CO Dejesus stood there for about 10 to 20 seconds while the assault was occurring and they did not try to stop Lopez or say anything to him. In fact, CO Rivera and CO Dejesus walked over to where the assault was occurring when they decided to stop Lopez from assaulting [Plaintiff] and they sprayed Lopez with mace to get Lopez to stop beating on [Plaintiff]

(*Id.* at 12-13).

On September 24, 2025, Plaintiff was treated for his injuries, including cuts on his elbow, bleeding mouth, cut on his eye and head, and back injuries. Plaintiff claims he has received continuous medical treatment for pain, including medications for headaches and "visual pain" behind his eye. (*Id.* at 14). Plaintiff has also experienced psychological delusions that cause him to be afraid of newly arriving inmates. Plaintiff states he is being treated by a psychologist as a result. (*Id.*).

Plaintiff brings three claims based on these factual allegations. In his first claim, he states that CDCR Secretary Macomber and Warden O'Bryant violated Plaintiff's Eighth

Amendment, Title 15 § 3380(a), and California Penal Code § 2652 by standing "by an unwritten policy and practice of forcing threat group and gang members that are a danger and violent threat to the public and prison population to house together is directly responsible for creating the environment that led to the brutal assault on [Plaintiff]." (*Id.* at 15–16).

In his second claim, he states that COs Rivera and Dejesus denied "plaintiff his rights to be safe and in a secured environment and free from cruel and unusual punishment in violation of Title 15 § 3380(a), California Penal Code § 2652 and Eighth Amendment rights." (*Id.* at 16-17).

In his third claim, Plaintiff references the allegations in his first and second claims against all Defendants and states that Defendants violated his rights "to safety, to be secured and free from cruel and unusual punishment that inflicted injuries on plaintiff required medical treatment violating Title 15 § 3380(a), California Penal Code § 2652 and Eighth Amendment rights." (*Id.* at 16-17). Additionally, Plaintiff states "[b]ecause the actions of the Defendants are deliberate and has caused permanent damages to [Plaintiff] physically, this Court should consider punitive damages in the amount requested to deter the deliberate reckless misconduct from occurring again." (*Id.* at 19).

As for damages, Plaintiff seeks a variety of declaratory, injunctive, and monetary relief, including $50,000 from each Defendant for "their deliberate conduct that led to the assault on [Plaintiff]" and $100,000 against each Defendant in punitive damages. (*Id.* at 20–21).

## III.    ANALYSIS OF PLAINTIFF'S COMPLAINT

### a.  Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*,

490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

"The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### b. Deliberate Indifference to Safety Needs

Plaintiff's first, second, and third claims allege that Defendants were deliberately indifferent to his safety needs in violation of the Eighth Amendment.

"The Constitution does not mandate comfortable prisons, but neither does it permit

inhumane ones . . . . ” *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). Among other things, the Eighth Amendment requires prison officials to “take reasonable measures to guarantee the safety of . . . inmates.” *Id.* (citation omitted). “Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.” *Id.* at 834 (citation and quotation marks omitted). To establish a claim for deliberate indifference to a prisoner’s safety needs, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner’s safety. *Id.* at 837.

“‘Deliberate indifference’ has both subjective and objective components.” *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that “the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference.” *Farmer*, 511 U.S. at 837. “Liability may follow only if a prison official ‘knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.’” *Labatad*, 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847). “[I]n order to satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes.” *Lemire v. California Dep’t of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013).

With these standards in mind, Plaintiff alleges in his first and third claims that CDCR Secretary Macomber and Warden O’Bryant followed a policy and practice to house “threat group and gang members” with “model prisoners,” which led to a greater risk of danger to the “model prisoners” like Plaintiff. (ECF. No. 8 at 11). Additionally, in his second claim, he alleges that Defendants Rivera and DeJesus denied Plaintiff his right to “be free from cruel and unusual punishment.” (*Id.* at 16-17).

The Court recommends finding that Plaintiff’s first amended complaint fails to adequately allege that any of the named Defendants acted with deliberate indifference to his

safety needs.

The Court begins with the claims against Defendants Macomber and O'Bryant. As a general matter, courts give great deference to prison officials' policy decisions. *See, e.g., O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987) ("To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ("Because the realities of running a penal institution are complex and difficult we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators.").

Although Plaintiff alleges that Defendants Macomber and O'Bryant instituted an unconstitutional policy regarding classification of inmates, Plaintiff fails to describe the purported policy with any specificity. Plaintiff's allegations regarding a policy of housing "threat group and gang members" with "model prisoners," is vague and does not provide sufficient information about the policy to find that it is unconstitutional.

Moreover, the allegation that CDCR policy and practice force such inmates to live together as part of CDCR officials' efforts to force the most dangerous incoming prisoners to reform, which results in "attacks and assaults on the model prisoner population," is conclusory. (*Id.* at 11). *Ashcroft,* 556 U.S. at 678.  Plaintiff does not describe what constitutes "gang members" or "model prisoners." Plaintiff does not describe anything else about the classification policy, such as whether CDCR has policies in place to evaluate specific threats to prisoners, including known enemies, and assign them to housing based on an individualized evaluation. Plaintiff also does not describe any reasons for such a policy that would allow this Court to evaluate whether any such policy was enacted with deliberate indifference to the safety needs of prisoners, not to mention Plaintiff specifically.

Although Plaintiff's first amended complaint does not provide any details of the policy at issue, to the extent Plaintiff is referring to a CDCR decision to merge Sensitive Needs Yards with General Population yards, a court within this District has explained why enacting such a

policy, in and of itself, does not constitute a violation of the Eighth Amendment:

> On December 12, 2017, Defendant Allison authored a department memorandum which announced the expansion of the merging of the SNY (Sensitive Needs Yard, previously called Protective Custody) prisoners with the General Population prisoners in all level 1 and level 2 yards.
>
> . . . .
>
> Plaintiff's allegation that Defendants Diaz, Allison, and Ndoh are well aware of, and are completely disregarding, the excessive risk to Plaintiff's health and safety is also a conclusory statement unsupported by any facts. Plaintiff has not alleged facts showing that he told Defendants Diaz, Allison, and/or Ndoh, or that each of the Defendants was aware of, a non-speculative, specific risk to Plaintiff's health and safety. Therefore, Plaintiff has not adequately pled that Defendants Diaz, Allison, and Ndoh knew of and disregarded an excessive risk of serious harm to Plaintiff's health and/or safety. . . .
>
> Accordingly, Plaintiff has not pled a cognizable claim against Defendants Diaz, Allison, and Ndoh, in their individual capacities, that, as applied to Plaintiff, the NDPF policy is invalid under the Eighth Amendment.

*Velasquez v. Diaz*, No. 1:19-CV-00683-DAD-BAM (PC), 2021 WL 3911309, at *1, 5–6 (E.D. Cal. Sept. 1, 2021), *report and recommendation adopted*, 2021 WL 4819436 (E.D. Cal. Oct. 15, 2021). Here too, Plaintiff has not alleged any facts indicating that the policy was done with deliberate indifference to his safety needs. Plaintiff's allegations about CDCR Secretary Macomber and Warden O'Bryant generally knowing of the risks in merging inmate populations are insufficient to establish that the policy was enacted with deliberate indifference to the safety of the prisoners, or the safety of Plaintiff in particular. Notably, Plaintiff does not allege any facts that they knew of a specific risk to him, *e.g.*, that he informed them personally of the risk or they otherwise had reason to suspect that he would be attacked.

Moreover, Plaintiff does not allege facts to show that any such policy was the moving force behind Lopez's attack on him. Plaintiff does not allege that Lopez or himself were previously housed in a segregated Sensitive Needs Yard and were forced to house together solely due to a change in prison policy. According to Plaintiff's complaint, Inmate Lopez "did not want to be housed at [VSP]" and informed unidentified "officials that he would attack *someone*" if he was forcibly housed there. (ECF No. 8 at 10) (emphasis added). Plaintiff does not connect this allegation to any policy regarding integration of the Sensitive Needs and

General Population Yards.

Moving to Plaintiff's remaining claim, he states that, while being transported by Defendants Rivera and Dejesus, Inmate Lopez violently attacked him, causing him numerous, severe injuries. (ECF No. 8 at 12-13). However, Plaintiff fails to allege that Defendant Rivera and Dejesus were deliberately indifferent to his safety or purposefully failed to protect him from the attack. Plaintiff does not allege any facts indicating that Defendants Rivera and Dejesus were aware that Lopez would attack Plaintiff. Moreover, Plaintiff alleges that Defendants ended the attack by spraying mace on sprayed mace on Lopez.

Plaintiff does allege that they stood for "a few seconds" before walking over to end the assault. (ECF No. 8, at p. 5).  However, a slight delay in intervening in a violent attack does not state a claim for a constitutional failure to protect. There are no facts to indicate that Defendants Rivera and Dejesus delayed in attempting to end the assault because they were deliberately indifferent to Plaintiff's safety needs, rather than to ensure that it was safe to engage with a violent situation. *See Rodriguez v. Isaac*, No. 1:09-CV-01784-AWI, 2012 WL 3231008, at *2 (E.D. Cal. May 23, 2012), *report and recommendation adopted*, 2012 WL 3231003 (E.D. Cal. Aug. 6, 2012), *aff'd* (Dec. 13, 2012) ("Nothing before the Court suggests that Defendants were aware of substantial risk of serious harm presented by the attack and that the intervening response by prison officials (who stopped the attack within 30 seconds after it started) was not reasonably sufficient . . . A merely negligent failure to discover or respond to the attack does not support a deliberate indifference claim.") (citation omitted).

Accordingly, the Court recommends finding that Plaintiff fails to state a claim for deliberate indifference to his safety needs against any Defendant.

### c. State Law Claims

Plaintiff also claims that Defendants violated Title 15 § 3380(a) and California Penal Code § 2652. (ECF No. 8 at 15–18). However, Plaintiff cannot sue under any of these provisions.

Beginning with Title 15 § 3380(a), it provides as follows: "The warden or superintendent of an institution of the department is the chief executive officer of that

institution, and is responsible for the custody, treatment, training and discipline of all incarcerated persons under his charge." Cal. Code Regs. tit. 15, § 3380. However, "there is no private right of action for violation of Title 15 of the California Code of Regulations." *Hubbard v. Johnson*, No. 19-CV-04136-JST, 2019 WL 5579507, at *5 (N.D. Cal. Oct. 29, 2019); *see Israel v. Carter*, No. 2:21-CV-1267-JAM-KJN P, 2022 WL 874941, at *4 (E.D. Cal. Mar. 24, 2022), *report and recommendation adopted*, 2022 WL 2954379 (E.D. Cal. July 26, 2022) (citing cases concluding that there is no private right of action under Title 15 of the California Code of Regulations).

Next, California Penal Code § 2652 provides as follows:

> It shall be unlawful to use in the prisons, any cruel, corporal or unusual punishment or to inflict any treatment or allow any lack of care whatever which would injure or impair the health of the prisoner, inmate or person confined; and punishment by the use of the strait-jacket, gag, thumb-screw, shower-bath or the tricing up of prisoners, inmates or persons confined is hereby prohibited. Any person who violates the provisions of this section or who aids, abets, or attempts in any way to contribute to the violation of this section shall be guilty of a misdemeanor.

Cal. Penal Code § 2652.

However, this statute also provides no private right of action for Plaintiff to sue under. *Joyce v. Sherman*, No. 1:20-CV-01324-SAB (PC), 2020 WL 13789836, at *5 (E.D. Cal. Nov. 16, 2020) ("The Court has reviewed the criminal statutes in question and finds that Plaintiff cannot sue for damages under California Penal Code Section 2652.").

Accordingly, Plaintiff's state law claims are not cognizable, and he fails to state a claim.

## IV. CONCLUSION AND ORDER

For these reasons, the Court recommends that the First Amended Complaint be dismissed for failure to state a claim. Moreover, because the Court previously screened Plaintiff's original complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff an opportunity to amend his complaint, it appears that further leave to amend would be futile.

Accordingly, the Clerk of Court is directed to assign a district judge to this action.

Additionally, IT IS RECOMMENDED that:

1.      Plaintiff's first amended complaint (ECF No. 8) be dismissed with prejudice for failure to state a claim, without further leave to amend;

2.      Plaintiff's motion for leave to amend (ECF No. 9) be denied as moot; and

3.      The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 11, 2026**          /s/ *Erica P. Grosjean*
                                      UNITED STATES MAGISTRATE JUDGE